## Stockburger v. Newtown Borough Board of Adjustment

*Eastburn, Gray & Williams,* for appellant.

*Stuckert & Yates,* for zoning board.

FULLAM, J., March 12, 1962.—This is an appeal by the owners of an automobile sales agency from a zoning board of adjustment decision which partially refuses their application to erect certain metal poles and illuminated plastic panels along two sides of a used car lot which forms a portion of their premises in Newtown Borough. The main question is whether the proposed structure, or any part of it, would constitute a "sign" within the meaning of the applicable zoning ordinance.

Appellants' property fronts on the easterly side of State Street. The used car lot occupies the northernmost portion of the property, and has a frontage of about 60 feet and a depth of about 50 feet; a driveway, running from State Street to Court Street at the rear of the property, separates the used car lot from the new car showroom to the south. Both the used car lot and the driveway are macadamized, and at present there is no clear-cut distinction between the two, with the result that the area intended for the display of automobiles for sale is sometimes used as a parking lot by customers, and even by members of the general public who mistake the driveway for a public alleyway.

To alleviate this situation, and also to illuminate and advertise the used car lot, appellants desire to erect the contrivance involved in this appeal, which can be better described than named. Appellants propose to erect a row of metal poles, ten feet apart and ten feet high, along the State Street frontage of the used car lot, and a similar row of poles at right angles to the first, extending back along the driveway. There would be seven poles along State Street and four poles along the driveway. These poles would support, at an elevation of about ten feet, a series of contiguous hollow

plastic panels in metal frames, so constructed as to be capable of being illuminated from within. Each plastic panel would be ten feet wide and 23 inches in height and would be equipped with metal tracks for the insertion of letters, each panel accommodating up to 12 letters ten inches high. The entire assembly of panels would be bordered above and below by continuous neon tubes. The entire assembly would somewhat resemble a long narrow theater marquee. The group of panels along State Street would bear the legend "Used Cars, QUALITY CHEVROLET, Used Trucks", although the size and arrangement of this lettering is not clear on the record, nor does it appear what lettering, if any, is proposed along the driveway side of the structure.

On the pole at the corner of the driveway, at an undisclosed height slightly above the plastic panels, would be located a plastic illuminated sign of standard design bearing the words "OK Used Cars". Two other posts along the State Street frontage would extend five feet above the plastic panels, and each would bear a cluster of spotlights. In addition, certain vertical illuminated plastic panels are proposed, three feet in height and extending below the panels mentioned above, on two of the poles along the front of the property.

The premises in question are located in a C-commercial zoning district. Section 901 (6) of the Newtown Borough Zoning Ordinance provides as follows:

"6. *Business or industrial signs* may be erected and maintained in Commercial Industrial Districts only, provided (a) that the area on one side of any such sign shall not exceed fifty (50) square feet, unless authorized as a special exception, and (b) such sign, except a directional sign, is erected only on the premises on which the use, to which the sign relates, is conducted."

No other provision of the ordinance bears materially on the question now before the court.

The zoning officer refused the application; the matter was appealed to the zoning board of adjustment, and after holding a public hearing on August 24, 1961, the board handed down its decision of September 12, 1961, as follows:

". . . it is the unanimous ruling of the Zoning Board of Adjustment that the following parts of your contemplated plan may be executed:

"1. The illuminated neon sign marked 'OK Used Cars' may be erected on the corner pole, as shown on the plan, or another of the poles shown on the plan.

"2. Since the lighted valence shown on your plan constitutes a sign, such use is restricted to a total of 50 sq. ft. Therefore, you may illuminate and letter two 10-foot sections of the valence which, with your neon sign, gives you a total of 52.16 sq. ft. of sign area . . ."

Counsel for both sides seem to assume that the zoning board decision would permit the erection of the entire proposed structure, so long as lettering and interior illumination are limited to any two of the ten foot sections of plastic panel; and we shall adopt this interpretation also. It further appears that appellants would be willing to limit the lettering along State Street to two of the ten foot panels, provided they are permitted to illuminate the entire "valance" (although there is some indication that appellants would also insist on being permitted to illuminate and letter the panels which extend along the driveway).

The entire record in this case consists of a stipulation of counsel, filed in lieu of a return by the board to the writ of certiorari, and in lieu of any further evidence. In consequence, it is unfortunately impossible to determine precisely what areas of the "valance" appellants desire to illuminate and letter. If there is

error in the decision appealed from, our only recourse is to remand the case to the board for further proceedings, unless we conclude that the proposed structure does not constitute a "sign" at all.

Accordingly, the initial question to be resolved is whether or not the proposed contraption constitutes a "sign" within the meaning of Newtown Borough Zoning Ordinance. If it does not, neither the zoning officer nor the board had any authority to refuse the application. If it does, we then reach the further question of determining what constitutes "the area on one side of . . . such sign".

The ordinance contains no definition of the word "sign", and we must therefore apply its usual and ordinary meaning. Merriam-Webster's International Dictionary (Unabridged, 2nd Ed.) defines the word "sign", inter alia, as follows:

"1. A conventional symbol or emblem which represents an idea, as a word, letter, or mark; . . . 5. A lettered board, or other conspicuous notice, placed on or before a building, room, shop, or office to advertise the business there transacted, or the name of the person or firm conducting it; a publicly displayed token or notice."

Neither our research nor that of counsel has discovered any reported decision which is directly in point. Perhaps the closest analogy among the Pennsylvania cases is Commonwealth v. Pressman, 69 Montg. 27 (1952), which involved metal letters bolted upright on top of a horizontal canopy projecting from a supermarket building. The Montgomery County Court, in an opinion by Judge Corson holding that this constituted a sign within the meaning of a zoning ordinance, stressed the fact that the function of the lettering in question was to attract the attention of the public and to inform passersby of the nature of the business conducted within the building.

In Commonwealth v. Cohen, 39 D. & C. 575 (1940), it was held that the posting of paper placards in the windows of a drugstore did not convert the windows into billboards within the meaning of an ordinance. The court stated, at page 577:

". . . A billboard may be defined as being a board, panel, or tablet of some kind which is designed or intended for the posting of signs or placards, and certainly neither the building nor the store windows were designed or intended for that purpose, even though they might be occasionally so used. . ."

In Madison Stores Inc. v. Enkay Sales Corp., 142 N. Y. S. 2d 132, 207 Misc. 1091, one of the several grounds for decision was a holding that goldleaf lettering on the inside of the windows and door of a drugstore did not constitute a sign within the meaning of a zoning ordinance.

In light of the foregoing, we believe that the present question involves the application of the following tests: (1) Does the proposed structure look like a sign? (2) Does it perform the functions of a sign, i.e., does it advertise and inform? (3) Is it designed and intended to perform the functions of a sign, or is its sign function merely incidental?

We believe that the structure proposed by appellants qualifies as a "sign" or "signs" under all of these tests. It conveys a message. It attracts attention to the commercial enterprise. It has the appearance of a sign. It is designed and manufactured, and would be installed, by a sign company. And while the structure as a whole might serve some other incidental purposes besides advertising, it seems too clear for argument that the principal purpose and function of the plastic panels themselves would be for advertising purposes. (Separation of the used car lot from the balance of the premises is accomplished by the posts, and illumination of the used car lot is accomplished primarily by the

spotlights and separate illuminated panels. None of these portions of the structure has been treated as part of the sign by the zoning board.) The plastic "valances" are obviously designed and intended to attract attention to themselves and the message they contain.

We have therefore concluded that the zoning board reached the correct result in treating the plastic panels as a sign. Indeed, appellants themselves seem to have recognized the correctness of this conclusion, inasmuch as their original application was for a permit to "erect signs on a lot located on the east side of South State Street".

The subsidiary problem, the computation of the "area on one side of . . . such sign" is more difficult. In its approach to this problem, we believe the zoning board committed error.

In the first place, the board's decision is self-contradictory. The zoning ordinance does not limit the number of signs which may be erected upon a given property. The board held that any two of the plastic panels might be illuminated and lettered. If this definition of sign area were correct, then each of such areas should be considered as a separate sign, and there would seem to be no reason why appellants should not have been permitted as many sets of two panels each as they could arrange on the entire "valance", so long as each set was separated by an unilluminated panel.

In the second place, the limitation of 50 square feet applies to "the area on one side of any such sign." We fail to see how that portion of the valance which extends back along the driveway, at right angles to the balance of the structure, could reasonably be considered the same "side" of the sign as that which faces on State Street. Here again, applying the tests of appearance and function, it seems clear that the entire structure must be deemed to constitute either two signs, or one sign with two sides.

But the basic error in the board's approach lies in the decisive weight it accorded the factor of illumination. The board apparently failed to consider what the structure would look like in daylight.

The board concluded that if all of the panels were lighted, and some of them were lettered, the entire structure would constitute a single sign. We agree with this conclusion, insofar as it applies to the panels which front in the same direction. But we cannot agree with the board's conclusion that the size of such "sign" can be reduced merely by failing to illuminate some of the panels. As a practical matter, we suspect that the proposed structure, if erected in accordance with the decision of the board, would resemble not a smaller sign, but simply a larger sign with defective wiring. And during daylight hours, the full size of the sign would be unavoidably manifested, in any event.

For these reasons, we cannot affirm the decision of the board in its present form, and the case will be remanded to the zoning board for further proceedings. In the event of such further proceedings, the board may also wish to consider whether the "OK Used Cars" device constitutes an integral part of the structure, or whether it should be considered as a separate sign for purposes of computing the permissible area. This question has not been raised before us and we express no opinion with respect to it.

To summarize, we conclude: (1) the proposed structure does constitute a "sign" within the meaning of the zoning ordinance; (2) that portion of the proposed structure which extends along the driveway should be considered separately from that portion which parallels State Street; (3) in its area computations, the board should include not only the area of the actual lettering, but also whatever other portions of the structure would, under any reasonably likely

circumstances of operation, have the appearance of constituting the background for the lettering.

## Order

And now, March 12, 1962, for the reasons set forth in the foregoing opinion, the order appealed from is reversed, and the case remanded to the zoning board of adjustment for further proceedings not inconsistent with the views herein expressed. Costs on the appellants.